THE STATE OF OHIO, APPELLEE, *v.* JUREK, APPELLANT.

(No. 55962—Decided November 6, 1989.)

*John T. Corrigan,* prosecuting attorney, and *Christa D. Brunst,* for appellee.

*James R. Willis* and *Philip J. Korey,* for appellant.

MITROVICH, J.

## I. The Facts, Generally

Defendant-appellant, Frederic ("Fred") Jurek, was indicted for two counts of bribery, R.C. 2921.02, and two counts of obstruction of justice, R.C. 2921.32. After trial in the Cuyahoga County Court of Common Pleas, a jury returned guilty verdicts on all four counts. For purposes of sentencing, however, the trial court merged the offenses of obstruction of justice into the offenses of bribery as allied offenses of similar import. R.C. 2941.25. Appellant hereby appeals his convictions.

Evidence adduced at trial revealed that appellant was an attorney at law, licensed to practice in the state of Ohio. Since 1978, appellant shared offices in the Standard Building with another attorney by the name of Bruce Melamed. Melamed had a client named Latricia Koltiska, whom he had represented in a domestic relations matter in the early months of 1986. Koltiska owed Melamed approximately $1,000 for such services, which debt remained unpaid at the time of the events which led to the instant convictions.

In the spring of 1986, Koltiska had certain problems with one Robert Frye. Such problems resulted in Koltiska's bringing criminal charges against Frye. A misdemeanor charge of aggravated menacing was brought in Cleveland Municipal Court, and a felony charge of intimidation was filed in the Cuyahoga County Court of Common Pleas after grand jury proceedings. No civil complaint was ever filed by Koltiska.

Appellant represented Frye in these two criminal cases.

The misdemeanor charge was set for hearing on May 23, 1986 before Cleveland Municipal Court Judge Charles Fleming. Melamed testified that he and appellant had discussed the case prior to that time, and that Melamed had suggested to appellant that, since Koltiska owed Melamed money for the previous domestic relations representation, perhaps an arrangement could be worked out where Koltiska would drop the charges in exchange for an amount of money to be paid by Frye, and out of such proceeds Koltiska could in turn pay her outstanding debt to Melamed. Melamed suggested that appellant talk to Frye about this scheme, and Melamed would proposition Koltiska, couching the payment in terms of "civil damages."

On the date of the hearing in municipal court, Melamed met Koltiska at the Justice Center and discussed the aforementioned deal. Koltiska was noncommital after this initial conversation, but, according to Melamed, she did indicate that she would desire $1,000 for dropping the misdemeanor, and $2,500 for dropping the felony charge.

On the same date, after talking to Koltiska, Melamed met appellant in another part of the Justice Center and informed him of Koltiska's uncertainty, and of her suggested dollar amount. Melamed then returned to his office. Later that morning he received a phone call from the Justice Center from Koltiska, who was at that time with the appellant. Appellant got on the phone and informed Melamed that Koltiska was willing to go through with the plan.

Koltiska testified that after her initial conversation with Melamed at the Justice Center on the morning of the date set for hearing, but before the subsequent conversations with appellant in person, and with Melamed by phone, she went down to the Narcotics

Unit of the Cleveland Police Department. She told Detectives Mark Kabot and Jacalyn Scharf about Melamed's proposition. She was then searched and a recording device was placed on her body. She returned to the fourteenth floor, where the hearing was to be held, and spoke with the appellant, accepting his offer of $1,000 with respect to the imminent misdemeanor charge and $2,500 for the future dismissal of the felony charge in common pleas court.

Shortly thereafter, Koltiska entered Municipal Court Judge Fleming's courtroom and told the judge that she wanted to drop the charge against Frye. The charge was dismissed.

At that time, appellant left the courtroom and returned to his office at the Standard Building. Melamed heard appellant return and entered appellant's office to find out how everything turned out at the municipal court. Melamed asked appellant whether he had paid Koltiska, to which appellant replied that he had not, and handed Melamed the $1,000 with which to pay her. Melamed returned to his office, and minutes later Koltiska arrived. Melamed took her into his office and gave the the $1,000, but took back $500 in compromise for her outstanding debt for the prior domestic relations legal services rendered.

Koltiska then went to the lobby of the Standard Building, where Detective Kabot was waiting. She gave Detective Kabot the five one-hundred-dollar bills.

Much of the testimony of the witnesses for the prosecution was corroborated by the tape recordings of various conversations to which Koltiska was a party, and by the testimony of one Theresa Stevens, who accompanied Koltiska throughout the day of May 23, 1986.

The preceding events led to the appellant's conviction for bribery and obstruction of justice as charged in Counts I and II of the indictment. Counts III and IV relate to the preceding events and those that follow.

In September 1986, Koltiska received a subpoena to appear in common pleas court for the felony charge of intimidation against Frye. She contacted Detectives Kabot and William Ober, who supplied her with a telephone recording device, and then called the law offices of Melamed and appellant. She spoke first with Melamed, who told her that she should talk only with appellant, since he wanted nothing more to do with this matter. Later the same day, appellant called Koltiska and told her that the felony charge would be handled in the same manner as the misdemeanor charge.

On September 8, 1986, Koltiska went to the Cleveland Police Department and again had a recording device placed on her body. She then went up to Common Pleas Court Judge Lloyd O. Brown's courtroom on the twentieth floor of the Justice Center, where the hearing on the felony charge was to take place. There, she met appellant, who led her to a private conference room, told her he had $1,000 for her, and explained to her that she should answer in the negative if the judge asked her whether she was forced to drop the charge.

After leaving the conference room she saw appellant talking with Melamed, by whom she was subsequently led to a less traveled area of the twentieth floor where she was given $1,000. Koltiska then spoke with her assistant prosecuting attorney, Kathleen Peterson, and told Peterson she wanted to drop the charge.

As it turned out, the proceedings were postponed until the following day, September 9, 1986, on which date the recording device was once more placed on Koltiska's body by Cleveland

police. Koltiska appeared before Judge Brown on that date and explained to the judge that she wanted to drop the charges. Judge Brown ultimately dismissed the case. Again, much of the testimony regarding these events was corroborated through the use of audiotapes of various conversations.

On October 24, 1986, indictments for bribery and obstruction of justice were handed down by the grand jury naming as defendants appellant, Bruce Melamed and Robert Frye. On the same day, Melamed was arrested and taken to a Howard Johnson Motel where he was interrogated by prosecutors and police. A plea bargain was arranged whereby Melamed was permitted to plead guilty to obstruction of justice, without the possibility of incarceration, in exchange for his cooperation and testimony in these and other proceedings.

On November 3, 1987, the charges against Frye were dismissed by the state for want of prosecution.

Appellant timely filed his notice of appeal to this court, assigning two errors for our review.

## II. Error re: Restrictions on Defense Cross-Examination

Appellant contends in his first assignment of error:

"The defendant was denied due process and deprived of his Sixth Amendment right of confrontation in the wake of various rulings, which barred his counsel from fully cross-examining the state's main witnesses and which frustrated the development of impeaching proof."

Appellant attempted to discredit the testimony of the state's primary witness, Koltiska, by questioning her on cross-examination with respect to her prior involvement in drug dealing. Such impeachment was also attempted by way of the direct testimony of Detective David Piekerczky, who ex-

ecuted a search warrant at Koltiska's home early in 1986, finding contraband on the premises. It is important to note that Koltiska was never convicted of any crime relative to this search, since the informant for such warrant was later indicted and convicted for having "planted" the drugs found during the search. Appellant complains that the trial court unduly and prejudicially limited his questioning in this attempt at impeachment of Koltiska's testimony by reference to such collateral matters. We disagree.

The credibility of a witness may be attacked by evidence of certain prior convictions (Evid. R. 609), or by evidence of the untruthful character of the witness (Evid. R. 608). *State* v. *Rodriquez* (1986), 31 Ohio App. 3d 174, 176, 31 OBR 339, 341-342, 509 N.E. 2d 952, 954.

Evid. R. 608(B) provides:

"Specific instances of conduct. *Specific instances of the conduct of a witness, for the purpose of attacking* or supporting *his credibility,* other than conviction of crime as provided in Rule 609, *may not be proved by extrinsic evidence.* They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." (Emphasis added.)

As held by the Ohio Supreme Court in *State* v. *Kamel* (1984), 12 Ohio St. 3d 306, 12 OBR 378, 466 N.E. 2d 860, at paragraph two of the syllabus:

"Other than the Evid. R. 609 exception for certain criminal convictions, a witness' credibility may not be impeached by extrinsic proof of special instances of his conduct. *Such conduct may be inquired into only by the intrin-*

*sic ·means of cross-examination* within the guidelines set forth in Evid. R. 608(B).'' (Emphasis added.)

Further, this court held in *State* v. *Workman* (1984), 14 Ohio App. 3d 385, 391, 14 OBR 490, 497, 471 N.E. 2d 853, 861, in consideration of Evid. R. 608(B), that:

''* * * [E]ven if the court believed there was probative value to such testimony, the testimony can only be heard when the witness himself is being cross-examined, or upon cross-examination of another witness who testified about the truthfulness of the first witness. *In no instances can such testimony be heard upon direct examination.* '' (Emphasis added in part.)

Thus, appellant's attempt to discredit Koltiska by the extrinsic means of the direct examination of Detective Piekerczky was not improperly restricted by the trial court. Evid. R. 608(B) specifically prohibits such testimony on purely collateral matters.

Regarding the trial court's limiting of the cross-examination of Koltiska, we likewise find no error. The Ohio Supreme Court stated in the case of *State* v. *Leuin* (1984), 11 Ohio St. 3d 172, 174, 11 OBR 486, 489, 464 N.E. 2d 552, 555:

''Evid. R. 608(B) allows, in the court's discretion, cross-examination on specific instances of conduct 'if clearly probative of truthfulness or untruthfulness.' Nevertheless, if the answers received on cross-examination do not satisfy the examiner, it is said that the examiner is bound by or 'stuck' with the responses. See, *e.g., State* v. *Gardner* (1979), 59 Ohio St. 2d 14, 19 [13 O.O. 3d 8].''

Moreover, trial counsel's ability to discredit a witness through cross-examination on particular instances of the witness' conduct is not absolute, but is limited to the trial court's discretion. *State* v. *Williams* (1981), 1 Ohio App. 3d 156, 158, 1 OBR 467, 469, 440 N.E. 2d 65, 67.

In the instant case, the trial court allowed defense counsel ample opportunity to cross-examine the state's witness. In fact, defense counsel effectively elicited an admission on the part of Koltiska, during cross-examination, that she had sold narcotics in the past. Thus, the jury was made aware of her less-than-sterling background, and certainly evaluated her testimony in light of such admission.

The jury was also instructed by the trial court to beware of Koltiska's testimony as a whole. The trial court warned the jury that, as an informant, Koltiska's testimony should be subject to ''grave suspicion'' and ''weighed with great caution.''

Under these circumstances, we find that the trial court did not abuse its discretion, but permitted defense counsel reasonable latitude in cross-examination. Appellant was not denied his constitutional right to confront the state's witnesses, and his first assignment of error is not well-taken.

### III. Sufficiency of the Evidence

In his second assignment of error, appellant asserts:

''The appellant was denied due process since he was convicted on the basis of evidence which was insufficient as a matter of law to support the findings of guilt made by the jury.''

Essentially, appellant argues that the state failed to present sufficient evidence on each essential element of the crime of bribery. We disagree.

As held in *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132, at the syllabus:

''A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.''

The test to be applied in reviewing the sufficiency of the evidence, as delineated in the case of *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 175, 20 OBR 215, 218-219, 485 N.E. 2d 717, 720, is "* * * whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt."

Pertinent to this case, the offense of bribery is proscribed at R.C. 2921.02(C) as follows:

"No person, with purpose to corrupt a witness or improperly to influence him with respect to his testimony in an official proceeding, either before or after he is subpoenaed or sworn, shall promise, offer, or give him or another person any valuable thing or valuable benefit."

Relating to Count I of the indictment, the bribery occurring on May 23, 1986, testimony and tape recordings presented by the prosecution at trial revealed that appellant on that date offered Koltiska $1,000 in exchange for her testifying at the Cleveland Municipal Court that she would like to drop the pending misdemeanor charge against appellant's client, Robert Frye.

As for Count III of the indictment, the bribery occurring by September 9, 1986, testimony and tape recordings at trial clarified that appellant spoke with Koltiska prior to the hearing at the Cuyahoga County Court of Common Pleas, and told her that the felony charge at the common pleas court would be "worked out the same way" as the misdemeanor charge at the Cleveland Municipal Court. At the Justice Center on the morning scheduled for a hearing on the matter, appellant took Koltiska in a private conference room and showed her the

$1,000 she was to be given in exchange for testifying that she wished to drop the charges. Clearly, a reasonable jury could conclude that the state had demonstrated beyond a reasonable doubt that, in both instances, appellant offered a thing of value in order to improperly influence Koltiska with respect to her testimony before both courts.

Accordingly, appellant's second assignment of error is not well taken, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN V. CORRIGAN, P.J., and JOHN F. CORRIGAN, J., concur.

PAUL H. MITROVICH, J., of the Court of Common Pleas of Lake County, sitting by assignment.