The STATE of Ohio, Appellee,

v.

HAMILTON, Appellant.

[Cite as *State v. Hamilton* (1991), 77 Ohio App.3d 293.]

Court of Appeals of Ohio,
Butler County.

No. CA90–05–097.

Decided Sept. 23, 1991.

*John F. Holcomb*, Prosecuting Attorney, and *William A. Sherman II*, for appellee.

*Ruppert, Bronson, Chicarelli & Smith* and *John D. Smith*, for appellant.

JONES, Presiding Judge.

Defendant-appellant, Jackie T. Hamilton, was convicted of one count each of rape and gross sexual imposition following a bench trial in the Butler County Court of Common Pleas. On appeal, appellant raises four assignments of error which read as follows:

Assignment of Error No. 1:

"The trial court committed prejudicial error by allowing the state to introduce evidence of an alleged specific instance of the defendant's sexual activity in violation of § 2907.02 and § 2907.05 of the Ohio Revised Code and Rule 608(B) Ohio Rules of Evidence."

Assignment of Error No. 2:

"The trial court committed prejudicial error by allowing the state's expert to testify as to her opinion of the veracity and credibility of the statements of a child declarant in violation of the rule set forth in *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989)."

Assignment of Error No. 3:

"The trial court committed prejudicial error in permitting the expert witness to testify as to the child's out-of-court statements."

Assignment of Error No. 4:

"As a matter of law, the defendant's right to a proceeding free from prejudice and in accordance with due process of law was violated when two crucial state witnesses were permitted to violate the court's sequestration order and discuss the case in the middle of the alleged victim's testimony."

The victim in the case at bar was a six-year-old girl whose mother had known appellant for approximately three years. On the morning of April 23, 1989, the victim's mother telephoned her friend, Ann Kidd, and asked Kidd to baby-sit the child. Kidd indicated she had already made plans for the day and would be unavailable. The mother then brought the victim to Kidd's home where appellant rented a room and asked appellant if he would watch the child while she attended a baseball game. Appellant, who had baby-sat the child on prior occasions, agreed and watched the child while Kidd left for an afternoon of motorcycle riding.

When the victim's mother returned to Kidd's residence at approximately 6:00 p.m., she found Kidd engaged in an argument with her ex-husband, Owen Kidd. The mother overheard Owen Kidd voice his displeasure concerning the Kidds' five-year-old son sleeping in the same bed with appellant. Concerned over Owen Kidd's statement, the mother later became suspicious and eventually questioned her daughter regarding the events of April 23. Based upon the child's responses, the mother took the child to a hospital where a full medical examination proved inconclusive regarding any sexual abuse or trauma. The mother then notified the authorities who recommended the child to the Children's Diagnostic Center in Butler County, where she was seen by Dr. Jane Sites, a child development specialist with a Ph.D., who conducted a victim interview with the child.

At appellant's trial, the court found the victim competent to testify. After answering some preliminary questions, however, the child became reluctant to answer questions regarding the offenses, and indicated she wanted to see her mother. The trial court granted the state's request for a recess, after which the child continued her testimony. The victim claimed that the offenses occurred in the living room of Kidd's home and that she called out to Kidd, who was cooking in the kitchen, for help. According to the victim, Kidd came to the living room doorway, observed what appellant was doing, and commented that it was "none of her business." On cross-examination, it was discovered that during the recess, the victim spoke with Dr. Sites in the restroom where Sites told the child to "do whatever you have to do and just say it out to the people."

Following the victim's testimony, the state called Dr. Sites as a witness. Over defense objection, Sites was permitted to repeat all statements which the child made during the victim interview. Sites was also permitted to testify that she had applied certain "checkpoints of credibility" to the victim's account of the offenses and found that the child "fit very well and passed the checkpoints," and was "consistent in both her verbalizations and demonstrations" in relating her story to Sites.

Ann Kidd, testifying as a defense witness, stated that she never prepared breakfast at her house on the morning of April 23, did not hear the victim cry out from the living room, and left with her boyfriend approximately one-half hour to an hour after the victim arrived. Appellant testified on his own behalf and denied any sexual misconduct with the victim. On cross-examination, the prosecutor asked appellant if he had any "perverse sexual desires" towards children, and appellant answered "no." The prosecutor then asked appellant if he had ever publicly looked at magazines containing photographs of nude women. Appellant replied by stating, "I won't say no, but I won't say yes." The prosecutor's next question was whether appellant ever masturbated in public, to which appellant answered "no."

The state then called a rebuttal witness who, over appellant's objection, testified that while she worked as a convenience store clerk during the early 1980's, appellant came into her store, looked at nudity-oriented magazines, and masturbated in her presence.

After finding appellant guilty as charged, the trial court sentenced appellant to a term of seven to twenty-five years imprisonment on the rape charge and a concurrent one and one-half year term on the gross sexual imposition charge.

In his first assignment of error, appellant claims the trial court erroneously permitted the state to introduce evidence of appellant's prior sexual activities

in violation of R.C. 2907.02 and 2907.05. The subject of this assignment of error is the rebuttal witness's testimony regarding appellant's conduct in the convenience store.

When the accused is charged with rape, R.C. 2907.02(D) provides that:

"Evidence of specific instances of the defendant's sexual activity * * * shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

Furthermore, before such evidence or testimony is received, the trial court shall resolve the question of admissibility in a hearing in chambers. R.C. 2907.02(E). Similar requirements exist for evidence used against an individual charged with gross sexual imposition. See R.C. 2907.05(D) and (E).

The state submits that appellant waived his right to have such evidence excluded by failing to timely request the *in camera* hearing provided for in R.C. 2907.02(E). When the state seeks to admit evidence of the accused's past sexual activities, the accused may waive his right to an *in camera* hearing upon the proposed evidence by failing to make a timely request for it. *State v. Acre* (1983), 6 Ohio St.3d 140, 144, 6 OBR 197, 200, 451 N.E.2d 802, 805. The state's position is that appellant could have requested an *in camera* hearing when the state announced that it wished to call a rebuttal witness, but, by failing to do so, appellant waived the opportunity to avoid or correct any possible error.

One of the major purposes of R.C. 2907.02(D) is to exclude "evidence that is unduly inflammatory or prejudicial, while only being marginally probative, to aid in the truth-finding process." *State v. Williams* (1986), 21 Ohio St.3d 33, 34, 21 OBR 320, 321, 487 N.E.2d 560, 561, citing *State v. Gardner* (1979), 59 Ohio St.2d 14, 13 O.O.3d 8, 391 N.E.2d 337. An *in camera* hearing would determine the question of admissibility without first exposing the trier of fact to possibly inflammatory and prejudicial evidence. However, where, as in the case at bar, the trial court serves in the dual capacity of determining both the admissibility of the evidence as well as its weight and credibility, an *in camera* hearing would not serve the purpose of insulating the trier of fact from evidence which is unduly inflammatory and prejudicial.

Even if there has been a waiver of any objection to the evidence under R.C. 2907.02(D), appellant contends that the rebuttal evidence was inadmissible under Evid.R. 608(B) as improper evidence of specific conduct

used to impeach his credibility. Evid.R. 608(B) provides, in part, that: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. * * * " Within the context of Evid.R. 608(B), extrinsic evidence is evidence offered other than during the testimony of the witness sought to be impeached. *State v. Jurek* (1989), 55 Ohio App.3d 70, 74, 562 N.E.2d 941, 944.

In *State v. Kamel* (1984), 12 Ohio St.3d 306, 12 OBR 378, 466 N.E.2d 860, the defendants were charged with involuntary manslaughter and child endangering stemming from the death of their two-year-old son. The father was asked on cross-examination if he had ever punished his child by grabbing his ear and slapping him. The father answered "no" to this question as well as the prosecutor's next question which was whether he had punished the child in such a manner in a Sears department store. On rebuttal, the state called a witness who testified about an incident in a Sears department store where he observed the father pull on the ear of his child while beating the child's face with his free hand. In ruling that the state's rebuttal evidence was inadmissible under Evid.R. 608(B), the supreme court observed that:

"The meaning of this rule [Evid.R. 608(B)] is very clear. Other than the Evid.Rule 609 exception for certain criminal convictions, a witness' credibility may not be impeached by extrinsic proof of specific instances of his conduct. Such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines sets forth in Evid.R. 608(B)." *Id.* at 311, 12 OBR at 383, 466 N.E.2d at 865.

Likewise, the court in *State v. Strobel* (1988), 51 Ohio App.3d 31, 554 N.E.2d 916, applied the *Kamel* ruling to exclude testimony of the state's rebuttal witnesses which constituted extrinsic proof of specific instances of prior sexual conduct or activity admitted for the sole purpose of impeaching the defendant's credibility. On cross-examination, the defendant, who was charged with three counts of gross sexual imposition, denied touching any family relative other than his wife in a sexual fashion. On rebuttal, the state called two other family members who disputed the accused's claim with testimony of specific instances of sexual conduct involving the defendant. The court of appeals concluded that the trial court erred in admitting the rebuttal testimony which "clearly constituted ' * * * extrinsic proof of specific instances * * * ' of prior sexual conduct admitted for the sole purpose of impeaching the defendant's credibility." *Id.* at 35, 554 N.E.2d at 921.

It is readily apparent that once appellant answered the prosecutor's last question in the negative, the state could not thereafter offer extrinsic proof of specific instances of appellant's prior sexual conduct or activity for

the sole purpose of impeaching appellant's credibility. The state contends, however, that even if such evidence is irrelevant, any error in its admission is harmless in light of the fact that appellant had a bench trial. In support thereof, the state cites the general proposition that in a bench trial, the court is presumed to consider only competent, relevant and material evidence and will simply disregard any irrelevant evidence. See *State v. Benner* (1988), 40 Ohio St.3d 301, 314, 533 N.E.2d 701, 714, certiorari denied (1990), 494 U.S. 1090, 110 S.Ct. 1834, 108 L.Ed.2d 962; *State v. Astley* (1987), 36 Ohio App.3d 247, 523 N.E.2d 322.

With all due respect to the various trial judges who sit as the trier of fact in countless cases each year, the fact that a defendant forgoes a jury trial is hardly an excuse to give the state free rein to admit any and all evidence on the presumption that the trial court will separate the wheat from the chaff. Although an accused is not entitled to a perfect trial, he is entitled to a fair trial. *Michigan v. Tucker* (1974), 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182; *State v. Fawn* (1983), 12 Ohio App.3d 25, 28, 12 OBR 111, 114, 465 N.E.2d 896, 900. Just because the accused waives his right to "trial by jury," he does not waive his right to a "trial." See *State v. Robbins* (Ohio App.1963), 189 N.E.2d 641, 643, reversed on other grounds (1964), 176 Ohio St. 362, 27 O.O.2d 312, 199 N.E.2d 742. By agreeing to have the trial courts sit as the trier of fact, the defendant does not waive his right to have only relevant evidence submitted to the trier of fact.

We find that the rebuttal testimony introduced by the state was extrinsic evidence offered to impeach appellant's credibility and violated Evid.R. 608(B). We further find that the error in its admission was not rendered harmless simply because appellant was tried by the court and not a jury. For these reasons, appellant's first assignment of error is well taken and is hereby sustained.

Appellant's second and third assignments of error both concern issues involving the Ohio Supreme Court's decision in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. The second assignment of error claims that the trial court erroneously permitted Dr. Sites to offer her opinion as to the child victim's veracity and credibility. Under the third assignment of error, appellant contends that the trial court improperly allowed Sites to recount the child's out-of-court statements from the victim interview.

In *Boston, supra,* at 113, 545 N.E.2d at 1226, the Supreme Court addressed "difficult and significant evidentiary and constitutional law issues raised within the context of a child abuse case." The basic premise of the decision is that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* at syllabus. Accordingly, an " * * *

expert may not testify as to the expert's opinion of the truth or falsity, or accuracy or inaccuracy, of the statements of a child declarant." *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899, certiorari denied (1990), 498 U.S. ——, 111 S.Ct. 231, 112 L.Ed.2d 185. Within this context, *"Boston* stands for the proposition that expert testimony cannot be used to show that a child is telling the truth or that the child accurately testified." *Id.* at 62, 552 N.E.2d at 899.

In the case at bar, appellant submits that Sites' testimony regarding the victim's fulfillment of certain checkpoints of credibility amounted to improper opinion evidence of the child's veracity in an attempt to bolster the child's credibility in violation of *Boston*. Sites testified that as part of her interview process, she applied checkpoints of credibility to the child's story. These checkpoints included: (1) external and internal consistency in the story, (2) the internal explicit detail of the alleged sexual act, (3) the effect on the child while telling the story, (4) the child's motivation for telling the story, (5) any patterns of molestation, (6) periods of engagement and affection between the child and the alleged perpetrator, and (7) evidence of threats or secrecy employed. Following a general discussion of the checkpoints, Sites applied the individual checkpoints to the victim's story and concluded that the child "fit very well and passed the checkpoints."

The state answers appellant's charges by first arguing that appellant failed to object to Sites' testimony regarding the checkpoints, thereby requiring a finding of plain error. The record reflects that defense counsel objected to Sites' initial discussion of the checkpoints without elaboration and explanation of the checkpoints. Counsel also objected to Sites' testimony regarding the checkpoints' reliability in assessing the credibility of a child who has been an abuse victim. Furthermore, appellant objected to the court's original determination that Sites was an "expert" in the area of child abuse. Considering appellant's various objections throughout Sites' testimony, we are satisfied that appellant adequately objected with respect to the credibility checkpoints. Accordingly, a finding of plain error is not required.

Since appellant's trial was to the court, the state further contends that any *Boston* violation is harmless since the court would simply disregard any irrelevant evidence. See *Benner, supra*. The absence of a jury does not automatically preclude the application of *Boston* and a finding of error. In *Moreland, supra*, at 62, 552 N.E.2d at 899, the defendant was tried by a three-judge panel rather than a jury. The Supreme Court held that *Boston* prohibits the use of expert testimony to attack or bolster a child witness' credibility " * * * because the trier of fact, and not the expert, is burdened

with assessing the credibility and veracity of witnesses." This holds true whether the trier of fact is a jury or the trial judge.

The state relies on other appellate decisions in support of its position. In *State v. Phillips* (Apr. 16, 1990), Montgomery App. No. 11576, unreported, 1990 WL 42316, a psychologist testified that in applying certain criteria in evaluating the genuineness of a child's allegation of child abuse, he concluded that the accounts of the two victims were "remarkably consistent with children who have been sexually abused," including their identification of the perpetrator. The Montgomery County Court of Appeals held that such testimony was admissible under *Boston,* apparently relying on that provision of the decision which permits the use of a child's out-of-court statements for certain purposes, "including identifi[cation] [of] a perpetrator." *Boston, supra,* at 126, 545 N.E.2d at 1239.

Likewise, the court in *State v. Alderman* (Dec. 11, 1990), Athens App. No. 1433, unreported, 1990 WL 253034, found no error in an expert's testimony on factors used to "determine an individual's credibility." However, in questioning the expert on such factors, "[t]he state cautioned the witness that the question was general and not specifically related to the victim." *Id.* at 9–10. Although the expert testified that the victim's story was consistent, consistency was only one factor used to determine a witness' credibility and the expert "did not testify as to her opinion of how the victim rated on the remaining factors, nor did she render her ultimate opinion as to whether she felt the victim was truthful or credible." *Id.* The court found such testimony "did not invade the jury's domain as contemplated in *State v. Boston, supra.*" *Id.*

The case at bar can be distinguished from the appellate decisions discussed above. Unlike the expert's testimony in *Phillips, supra,* Sites' testimony was not limited to the use of checkpoints to simply verify a perpetrator's identity. As the state notes in its brief, "the use of these 'checkpoints of credibility' aided the trier of fact in deciding [the] critical issues [of] * * * whether the seven-year-old victim/witness was being truthful, whether she was fabricating her story, or if she was merely repeating things that had been suggested to her." Such clearly exceeds the scope of the use of witness testimony in *Phillips* and *Boston.* In addition, Sites specifically applied the checkpoints to the victim's testimony and testified that the victim satisfied the checkpoints. In *Alderman, supra,* care was taken to avoid just such a direct application of similar factors to the child victim's testimony.

By specifically applying the checkpoints of credibility to the victim's testimony, and by concluding that the child fit very well within the checkpoints and "passed" them, we believe that Sites offered an opinion of the veracity of the child's statements which violated the *Boston* prohibition against such

opinion testimony. Granted, the state did not ask Sites if she "had an opinion of the child's veracity" based upon her application of the checkpoints to the child's testimony. However, we believe that what is directly prohibited should likewise be indirectly prohibited. Simply because the expert cannot directly opine as to whether a witness is telling the truth, the witness should not be able to identify indicia or criteria of veracity or credibility which, if satisfied, would demonstrate truthfulness, then testify that a witness satisfies said indicia, thereby leaving the trier of fact to draw the obvious conclusion. In fact, this very result occurred in the case at bar when the trial judge, while issuing his verdict from the bench, observed that he "didn't have too much trouble with this case because of the credibility of the witnesses. The little girl, in my opinion, could not make up the scenario that she related in this case. *Also, her statements were corroborated by the lady from the Childrens Center.*" (Emphasis added.)

In his third assignment of error, appellant argues that the trial court erroneously permitted Sites to repeat those statements which the victim made during the interview. The state asserts that such statements were admissible under Evid.R. 801(D)(1)(b), which provides that statements are not hearsay if the declarant testifies at trial, is subject to cross-examination, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge of recent fabrication or improper influence or motive. The trial court relied on *Boston, supra,* as its basis for permitting Sites' testimony.

One of the guidelines established by the Supreme Court's decision in *Boston* states that *"[w]ith some limitations,* out-of-court statements, to a third person, of a child declarant who is in court and available for cross-examination are admissible as evidence since no confrontation problem arises." (Emphasis added.) *Boston, supra,* at 127, 545 N.E.2d at 1238. Unfortunately, *Boston* does not expand on this particular guideline's applicable limitations.

The state notes that defense counsel attempted to discredit the victim's testimony on cross-examination, thereby resulting in Sites' repetition of the child's statements from the victim interview. While Evid. 801(D)(1)(b) would permit the admissibility of a witness' prior statements consistent with the witness' trial testimony in order to rehabilitate the witness, we see no reason why the rule should allow a blanket recitation of everything the victim said during the course of her interview with Sites. After all, challenging a witness' testimony is not altogether an uncommon phenomena of cross-examination. While Sites could possibly relate the victim's specific statements pertaining to the acts of abuse, the identity of the perpetrator, and the locations where such abuse occurred, the complete recitation of the interview

on a question by question and answer by answer basis which repeats every statement the child made simply does not conform with Evid.R. 801(D)(1)(b).

For the reasons set forth above, we find that appellant's second and third assignments of error are well taken and are hereby sustained.

In his fourth assignment of error, appellant contends that Sites' meeting with the child in a rest room during a recess violated the trial court's witness separation order and Evid.R. 615, thereby depriving him of due process of law. Evid.R. 615 provides that a court shall order the exclusion of witnesses so that they cannot hear the testimony of other witnesses. In the case at bar, when the child became reluctant to testify and asked for her mother, the court granted a recess. It was later discovered, however, that the child did not meet her mother, but met with Sites in a restroom prior to resuming her testimony.

We find that the child's encounter with Sites did not violate Evid.R. 615 or the court's separation order. There is nothing to indicate that Sites heard the child's testimony, discussed the specifics of the child's testimony, or in any way told the child what to say. Sites simply reassured the child and told her to say what needed to be said. Appellant has not demonstrated that the victim's testimony was in any way tainted by the restroom conversation with Sites. The decision as to whether a separation order has been violated and whether subsequent testimony is to be admissible is subject to judicial discretion. *State v. Morris* (1982), 8 Ohio App.3d 12, 18, 8 OBR 13, 19, 455 N.E.2d 1352, 1358. We find no abuse of discretion and therefore conclude that appellant's due process rights were not violated. The fourth assignment of error is hereby overruled.

Having found appellant's first, second, and third assignments of error to be well-taken, appellant's convictions are hereby reversed, and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

WILLIAM W. YOUNG and WALSH, JJ., concur.