[Cite as *In re C.T.*, 2012-Ohio-1644.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97278**

---

## IN RE: C.T.
## A Minor Child

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 10117417

**BEFORE:** Sweeney, J., Stewart, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** April 12, 2012

**ATTORNEY FOR APPELLANT, C.T.**

Erika Finley, Esq.
Abel & Zocolo Co., L.P.A.
815 Superior Avenue
Suite 1915
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE, STATE OF OHIO**

William D. Mason
Cuyahoga County Prosecutor
By: Stephanie L. Lingle, Esq.
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶1} C.T., a minor child, appeals his adjudication of delinquency in the Cuyahoga County Court of Common Pleas, Juvenile Division. For the reasons that follow, we reverse and remand for a new adjudication hearing.

{¶2} The complaint against C.T. averred that he committed rape in violation of R.C. 2907.02(A)(2) on or about September 18, 2010, by engaging in sexual conduct with K.W. who was not his spouse by "purposely compelling him or her to submit by the use of force or threat of force * * *."

{¶3} On April 15, 2011, the state filed a Notice and Request to Use "Other Acts" Evidence Pursuant to Evid.R. 404(B). The state sought to introduce evidence from two other delinquency proceedings against C.T. that involved allegations of sexual misconduct. The state argued that the other acts evidence was admissible to establish *modus operandi* and to prove a lack of mistake concerning consent. The trial court admitted this evidence during the trial over defense counsel's objection.

{¶4} At trial, K.W. testified that she met C.T. in the high school band. As they traveled to a football game in different buses, K.W. initiated contact with C.T. by sending a text message to his cell phone. K.W. indicated she and her friends were reading about "sex and porn." K.W. and C.T. sat near each other during portions of the football game and then left on their separate buses where they resumed a text messaging phone conversation. They discussed "hanging out" together that night. C.T. suggested that they

should "hang out" in K.W.'s car; to which K.W. replied, "We shall. [F]ind me."

{¶5} Both K.W. and C.T. testified that they met each other at a party after the football game as planned and that K.W.'s mother was acting as a chaperone. K.W.'s mother recalled extending her daughter's curfew that night.

{¶6} As C.T. was walking K.W. to her car, K.W. either agreed or offered to drive C.T. home.[1] Both said C.T. was holding K.W.'s hand as she drove. According to C.T., they passed a street and wound up parking in a cul-de-sac with poor lighting. According to K.W., she initially believed C.T. lived in that area. In either case, both said they began talking.

{¶7} C.T. and K.W. then described a similar course of events where K.W. moved (or was assisted by C.T.) into the passenger side of the vehicle where C.T. was sitting. They began kissing. K.W. helped remove her sweatshirt and shirt and C.T. removed his penis from his pants. He asked K.W. to perform oral sex, and she indicated she had never done so before; to which C.T. responded that there was a first time for everything. K.W. performed oral sex on C.T., and he penetrated her vaginally with his fingers.

{¶8} K.W. testified that she told C.T. she did not want to engage in this activity and told C.T. to stop. C.T. testified that K.W. never said anything or gave any indication

---

[1]C.T. said he had a ride home with his brother who had brought him to the party but accepted K.W.'s offer to drive him home. K.W. said that C.T. asked her for a ride home.

to him that the activity was anything other than consensual. K.W. said she complied because she was fearful of C.T. but admitted he did not threaten her verbally or physically.

{¶9} At one point, K.W. returned to the driver's seat to check her phone. Her mother told her she needed to come home. According to C.T., K.W. said they could resume the sexual activity the next day. But, at C.T.'s request, she resumed performing oral sex upon C.T. K.W. said she did this just to get it over with and get out of the situation. C.T. wiped his hands with a tissue that he discarded out the window and onto the street.[2]

{¶10} C.T. testified that K.W. asked him if they were dating and seemed happy to know he was considering it. When K.W. returned home, she sent a cell phone text message to C.T. She invited C.T. to get together the next day but he said he could not because he was in trouble. Then, K.W. went to lunch with a friend and told her about her sexual encounter with C.T. Later that day, K.W. was on the bus with other band members when another teenager, B.T., called her outside to talk. B.T. asked K.W. about the allegations she had made against C.T. C.T. was standing nearby. C.T. denied that he forced K.W. to do anything. At this point, K.W. called her parents to pick her up and told her parents she had been raped by C.T.

---

[2]Police recovered the tissue from that area following K.W.'s report to them.

**{¶11}** K.W. was taken to the police station and then the hospital for an examination. As part of her statement to an examining nurse, K.W. indicated that she was aware that C.T. had "been in trouble with girls before, but [she] didn't want to believe it."

**{¶12}** More than once during her testimony, K.W. confirmed that if C.T. had indicated to her that they were boyfriend and girlfriend, they would not be in court. On redirect examination, however, K.W. indicated that even if C.T. had said she was his girlfriend, she would still say she was raped by him.

**{¶13}** During C.T.'s testimony, the state inquired about accusations and charges made against him in other cases. In one case, C.T. was found not delinquent. In another he pled delinquent to gross sexual imposition where another female accused him of forcing her to perform oral sex on him and accused him of digitally penetrating her.

**{¶14}** The juvenile court adjudicated C.T. delinquent and sentenced him to the Ohio Department of Youth Services for a minimum period of twelve months and a maximum period not to exceed the age of twenty-one.

**{¶15}** In his first assignment of error, C.T. alleges:

**{¶16}** "The trial court erred by permitting evidence of defendant's prior conviction to be admitted against the defendant when such conviction was unrelated to the current charge."

**{¶17}** In November of 2011, this court issued its en banc decision in *State v.*

*Williams*, 8th Dist. No. 94965, 2011-Ohio-5650, where the majority of the court established guidance for when other acts evidence is admissible under the Evid.R. 404(B) exceptions to prove "intent" or a "scheme, plan, or system." *Id*. at ¶3. We note that the juvenile court did not have the benefit of this precedent at the time of C.T.'s trial. However, it does apply to resolving this assignment of error because the state is claiming that the other acts evidence was admissible, in part, to prove identity also known as "modus operandi" or a criminal's "behavioral footprint." *Id*. at ¶54.

{¶18} This court held that there are "*only* two situations in which other acts evidence is admissible to show a defendant's 'scheme, plan or system': (1) to show the background of the alleged crime or (2) to show identity." *Id*. at ¶51; *see also State v. Curry*, 43 Ohio St.2d 66, 72-73, 330 N.E.2d 720 (1975). The first exception is not at issue in this matter.

{¶19} The state argues that C.T.'s prior delinquency case involved "activity that was essentially identical in modus operandi proved that he had a specific method of how he rapes young women." This is exactly the same type of argument that was rejected in *Williams. Id*. at ¶59. In *Williams*, the state argued that the modus operandi exception of Evid.R. 404(B) permitted the admission of an offender's prior conviction for sexual offenses to prove he had a pattern of molesting teenage boys. This court found that such evidence

> was not submitted to establish [the defendant] as the person who had

committed the acts of sexual abuse; rather the evidence was submitted for the purpose of showing that [the defendant] had a character trait of molesting teenage boys and that he acted in conformity with his past behavior. The state's argument relies on the very inferential pattern that Evid.R. 404(B) prohibits; evidence that [the defendant] previously molested a teenage boy was introduced only to compel the same inference — he did it before so he must have done it again.

*Id*. at ¶59.

**{¶20}** Similar to the fact pattern in *Williams*, the alleged perpetrator's identity in this case was not at issue. If a crime occurred, C.T. was the one who committed it. The exception of proving identity "does not * * * extend to other acts committed in a similar way for an unrelated offense when identity is not at issue." *Williams* at ¶54, citing, *State v. Eubank*, 60 Ohio St.2d 183, 186, 398 N.E.2d 567 (1979) (other citation omitted.) Accordingly, that exception to the rule does not justify the admission of evidence of C.T.'s prior delinquency adjudication.

**{¶21}** The other basis that the state relies upon to defend the court's admission of the other acts evidence is absence of mistake or accident. That exception, however, is totally inapplicable to the facts at issue in this case. C.T. never alleged that he was mistaken about anything. Rather, C.T. maintained that he and K.W. were engaged in consensual sexual activity. Conversely, K.W. said she did not consent. C.T.'s testimony directly conflicted with K.W.'s testimony on this point. C.T. did not recall K.W. saying anything at all about wanting to stop or not wanting to participate in the conduct. This is different than C.T. testifying that K.W. had said no but he thought she still consented,

which clearly would implicate the issue of mistake.

{¶22}   The testimony is clear and directly conflicting.  K.W. testified that she told C.T. to stop and that she did not want to do it.   K.W. said she was afraid of C.T. and that at one point he pushed her head down. C.T. said K.W. initiated the kissing and voluntarily participated in further sexual activity. He made no threats, and according to C.T., K.W. did not say or do anything to express she was an unwilling participant.   There is no mistake alleged in this record. This is simply an issue of credibility; whether K.W.'s version of events was more credible or the account given by C.T.   Therefore, the exception for absence of mistake or accident does not apply.

{¶23}   The state argues that even if the evidence was improperly admitted, the judgment should be affirmed based on harmless error or by applying a presumption that the juvenile court only considered relevant, material, and competent evidence.

{¶24}   Because the two exceptions relied upon by the state do not support the admission of the other acts evidence, the juvenile court erred by admitting it over the defense objection.  We find that there is a reasonable possibility that the juvenile court considered C.T.'s prior delinquency adjudication when it resolved the conflicts in the evidence and, therefore, we do not consider its admission harmless error.  *Williams*, 2011-Ohio-5650, ¶62.  Just as in *Williams*, this case hinged on the credibility of the witnesses and the admission of other acts evidence that suggests the accused has a propensity for engaging in the charged conduct and is unfairly prejudicial in violation of

Evid.R. 403 and 404. *Id*. at ¶64.

**{¶25}** Juv.R. 27(A)(3) provides in relevant part that "[t]he court shall hear and determine all cases of children without a jury, except for the adjudication of a serious youthful offender complaint, indictment, or information in which trial by jury has not been waived." The state urges us to presume that the juvenile court did not consider the other acts evidence in arriving at its judgment because the court, not a jury, acted as trier of fact in this case.

**{¶26}** However, when the juvenile court admits evidence over an accused juvenile's objection, it is counterintuitive to conclude that the juvenile court would then proceed to disregard that same evidence as being irrelevant, immaterial, or incompetent when rendering its judgment. If that were true, the juvenile court would have been bound to sustain the defense objection and exclude it in the first place. *See State v. Hamilton*, 77 Ohio App.3d 293, 300, 602 N.E.2d 278 (12th Dist.) (the error in admitting evidence is "not rendered harmless simply because appellant was tried by the court and not a jury.") Therefore, the general presumption that only relevant, material, and competent evidence was considered in a bench trial is inapplicable here.

**{¶27}** In order to insure a fair adjudicatory hearing, this cause must be remanded for a new hearing that excludes the inadmissible other acts evidence. The first assignment of error is sustained.

**{¶28}** The remaining assignments of error are moot. *See* App.R. 12(A)(1)(c).

**{¶29}** The adjudication of appellant as a delinquent is reversed and the case is remanded to the juvenile court for further proceedings consistent with this opinion.

**{¶30}** Judgment reversed, adjudication vacated, and cause remanded.

It is, therefore, considered that said appellant recover of said appellee his costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

JAMES J. SWEENEY, JUDGE


MELODY J. STEWART, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR