[Cite as *State v. Hubbs*, 2012-Ohio-5313.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

          Plaintiff-Appellee

v.

JESSE T. HUBBS

          Defendant-Appellant

:
:      Appellate Case No. 24969
:
:      Trial Court Case No. 11-CRB-883
:
:
:
:      (Criminal Appeal from Montgomery
:      County Municipal Court,
:      Eastern Division)
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of November, 2012.

. . . . . . . . . . .

RAYMOND DUNDES, Atty. Reg. #0041515, 7 South Mechanic Street, Lebanon, Ohio 45036
      Attorney for Plaintiff-Appellee

THOMAS B. SCOTT, Atty. Reg. #0075341, 130 West Second Street, Suite 2100, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Jesse T. Hubbs appeals from his conviction and sentence for

Violating a Protection Order, in violation of R.C. 2919.27, a misdemeanor of the first degree.

Hubbs contends that his trial counsel was ineffective for having failed to call his mother as a witness despite the fact that she had remained in the courtroom after a separation of witnesses. The record does not demonstrate that his mother's testimony would have been helpful to Hubbs, had she testified.

{¶ 2} Hubbs also contends that the trial court erred in overruling his objection to a question put to him on cross-examination that elicited from him the fact that he had previously been convicted of violating the same protection order. We agree. The admission of this evidence violated Evid.R. 609(A)(2). The only apparent purpose behind admitting the evidence would be to support the forbidden inference that because Hubbs committed the offense of violating the protection order on previous occasions, he likely did so on this occasion. Although this was a bench trial, in admitting the evidence over objection, the trial court indicated that it erroneously considered this evidence relevant to the issue of Hubbs's guilt of the charged offense.

{¶ 3} The judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

## I. The Protection Order and its Alleged Violation

{¶ 4} Hubbs was the subject of a protection order prohibiting him from contacting his former wife, Sarah Hubbs, except to discuss the well-being of their children. He was charged with having made approximately sixteen phone calls to Sarah Hubbs on or about April 30, 2011, concerning matters that did not have to deal with the welfare of their children.

{¶ 5} At a trial to the bench, the parties stipulated that the complaint was in error as to the date of the alleged offense, and that the correct dates were June 10 and June 11, 2011. Sarah Hubbs testified that Hubbs telephoned her many times on those dates and asked her about matters having

nothing to do with the welfare of her children.

{¶ 6} Hubbs testified in his own defense. He testified that he only called her twice on those dates, each time to discuss matters involving the children. He testified that his mother and his son had made the other calls listed on phone records received in evidence.

## II. The Course of Proceedings

{¶ 7} This case was tried to the bench. During the State's cross-examination of Hubbs, the following colloquy occurred:

Q. Did you try – now, correct me if I'm wrong, but you've been convicted in this court before for violations of the protection order –

MR. CROMLEY [representing Hubbs]: Objection.

MR. DUNDES [representing the State]: – two times, haven't you?

MR. CROMLEY: Objection.

THE COURT: Overruled.

MR. HUBBS: Yes, I have.

BY MR. DUNDES:

Q. Okay.

And now we're here on a third case?

MR. CROMLEY: Again objection.

MR. DUNDES: Your testimony is –

MR. CROMLEY: Hold on. I don't know if he heard it.

MR. DUNDES: Oh, I'm sorry.

MR. CROMLEY: I objected to the last question.

Overruled I assume?

THE COURT: I overruled.   Tr. 34.

**{¶ 8}**   Later during the cross-examination of Hubbs, the following colloquy took place concerning Hubbs's mother:

Q.   * * *

Now you've been talking about your mom that's kind of interesting, too.

And I think you testified that you tried to get your mom to call about the camping equipment.   Is that right, too?

A.   My son asked my mother if he would call to see if it was his phone, the phone he was calling from.

Q.   Okay.

Is your mother a witness in this case?

A.   Yes, sir.

Q.   Well, she can't testify because there's a separation of witnesses.

So, isn't it convenient that you bring the mother thing up, that your mom was trying to do this, too?

MR. CROMLEY: Your Honor, I'm going – I don't know if

MR. HUBBS: It's obviously –

MR. CROMLEY:   – that's a question or – or what relevance it has.

MR. HUBBS: Exact – I'm –

MR. DUNDES: I'll withdraw it.   Tr. 38-39.

{¶ 9}  At the conclusion of the hearing, the trial court took the matter under advisement. In its written verdict finding Hubbs guilty of the charged offense beyond reasonable doubt, the trial court found the testimony of Sarah Hubbs "very credible." The trial court found the testimony of Hubbs "not credible nor worthy of belief."

{¶ 10}  The only witnesses were Hubbs and his ex-wife, Sarah, the alleged victim. Their testimony was conflicting on the crucial issue of the telephone calls and the subjects discussed.

{¶ 11}  Hubbs was sentenced to 180 days in jail, with 60 days suspended, and was fined $100. He was also ordered to pay court costs. The sentence was imposed by a retired judge assigned in the case, not the judge who had presided over the trial. The sentencing entry erroneously reflects that Hubbs pled guilty to the charge, but no issue is raised concerning this error.

{¶ 12}  Hubbs appeals from his conviction and sentence. The State has not filed a brief on appeal.

### III.  Hubbs Has Failed to Demonstrate that his Trial Counsel's Failure to Have Attempted to Call His Mother as a Witness Prejudiced Him

{¶ 13}  Hubbs's First Assignment of Error is as follows:

DEFENSE COUNSEL FAILED TO ENFORCE THE SEPARATION OF WITNESSES ORDER OR TO RECOGNIZE THAT DISOBEDIENCE OF THE ORDER DID NOT NECESSARILY PROHIBIT JESSE'S MOTHER FROM TESTIFYING WHICH CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 14}  A criminal defendant is entitled to the effective assistance of trial counsel. To obtain reversal of a conviction based upon a claim of ineffective assistance of trial counsel, a defendant must establish both that his trial counsel's conduct did not fall within the range of reasonable professional assistance, and that there is a reasonable probability that the outcome of the

proceedings would have been different had counsel's performance not been deficient. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 15} Even if we assume that Hubbs has demonstrated, on this record, that his trial counsel was ineffective for having failed to arrange for his mother to testify, the record does not demonstrate that the outcome would likely have been different if she had testified. To determine that the outcome would likely have been different, we would need to know what his mother's testimony would have been. Her testimony was not proffered, so there is no way, on this record, to know what her testimony would have been. Her testimony might not have been helpful to Hubbs, or might even have contradicted his own testimony.

{¶ 16} Hubbs's First Assignment of Error is overruled. Our overruling of this assignment of error is without prejudice to any attempt that Hubbs may make to call his mother at a new trial in this case that may result from our reversal and remand.

## IV. The Trial Court Erred When it Admitted Evidence of Hubbs's Previous Violations of the Protection Order, Over Objection

{¶ 17} Hubbs's Second Assignment of Error is as follows:

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR ADMITTING PRIOR CONVICTIONS FOR VIOLATION OF THE PROTECTION ORDER IN DIRECT CONTRAVENTION OF THE OHIO RULES OF EVIDENCE.

{¶ 18} Evidence that a criminal defendant has previously been convicted of a crime is not generally admissible, although there are exceptions to the general rule, especially if the defendant testifies. In *State v. Goney*, 87 Ohio App.3d 497, 501-502, 622 N.E.2d 688 (2d Dist.1993), we quoted with approval then-Judge Warren Earl Burger's explanation of the reasons for the general

rule:

In *Gordon v. United States* (C.A.D.C.1967), 383 F.2d 936, Circuit Judge Warren Burger (later Chief Justice) reexamined the troubling question of the admissibility of prior convictions to impeach the accused's credibility. Judge Burger wrote the following at 940 of the court's opinion:

"In considering how the District Court is to exercise the discretionary power we granted, we must look to the legitimate purpose of impeachment which is, of course, not to show that the accused who takes the stand is a 'bad' person but rather to show background facts which bear directly on whether jurors ought to believe him rather than other and conflicting witnesses. In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not; traffic violations, however serious, are in the same category. The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness.

"*A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial*. Where multiple

convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity." (Emphasis added.)

{¶ 19} Here, the evidence of Hubbs's two prior convictions for violating the same protection order was admitted in a bench trial, with no jury to be prejudiced by the evidence. And yet, the evidence is no less inadmissible, and the inference is no less forbidden. Hubbs directs us to *State v. Hamilton*, 77 Ohio App.3d 293, 300, 602 N.E.2d 278 (12th Dist.1991), in which the court held:

With all due respect to the various trial judges who sit as the trier of fact in countless cases each year, the fact that a defendant forgoes a jury trial is hardly an excuse to give the state free rein to admit any and all evidence on the presumption that the trial court will separate the wheat from the chaff. Although an accused is not entitled to a perfect trial, he is entitled to a fair trial. *Michigan v. Tucker* (1974), 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182; *State v. Fawn* (1983), 12 Ohio App.3d 25, 28, 12 OBR 111, 114, 465 N.E.2d 896, 900. Just because the accused waives his right to "trial by jury," he does not waive his right to a "trial." *See State v. Robbins* (Ohio App.1963), 189 N.E.2d 641, 643, reversed on other grounds (1964), 176 Ohio St. 362, 27 O.O.2d 312, 199 N.E.2d 742. By agreeing to have the trial courts sit as the trier of fact, the defendant does not waive his right to have only

relevant evidence submitted to the trier of fact.

We find that the rebuttal testimony introduced by the state was extrinsic evidence offered to impeach appellant's credibility and violated Evid.R. 608(B). We further find that the error in its admission was not rendered harmless simply because appellant was tried by the court and not a jury. For these reasons, appellant's first assignment of error is well taken and is hereby sustained.

{¶ 20} To the foregoing, we would add the following observation. The trial court in the case before us presumably considered the evidence of Hubbs's two previous convictions for violating the protection order to have had some relevance; otherwise, it would not have admitted this evidence. The only apparent relevance would be to support the forbidden inference that if Hubbs violated the protection order before, he likely violated it on this occasion. In its written decision arriving at its verdict, the trial court did not indicate that it found this evidence relevant for some other purpose. Nor did it indicate that upon further consideration, the evidence was inadmissible, and would therefore not be considered by the trial court in arriving at its verdict.

{¶ 21} In short, the record demonstrates that the trial court erred in admitting, over objection, evidence of Hubbs's previous convictions for having violated the protection order. We presume that the trial court considered this evidence in arriving at its verdict; otherwise, the evidence would not have been admitted over objection. Because this was a case decided on conflicting evidence, with the trial court having found the State's witness to be more credible than the defendant, we conclude that the trial court's error in admitting the evidence of Hubbs's prior convictions was not harmless.

{¶ 22} Hubbs's Second Assignment of Error is sustained.

## V. Conclusion

{¶ 23}  Hubbs's Second Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

GRADY, P.J., and HALL, J., concur.

Copies mailed to:

Raymond Dundes
Thomas B. Scott
Hon. Michael W. Hemm
Hon. James D. Piergies