[Cite as *State v. Petty*, 2017-Ohio-9200.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

        Plaintiff-Appellee,            :              No. 17AP-385
                                                    (C.P.C. No. 14CR-3744)

v.                                               :

                                                         (REGULAR CALENDAR)

Mathias D. Petty,                                :

        Defendant-Appellant.           :

---

D E C I S I O N

Rendered on December 21, 2017

---

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued**: *Seth L. Gilbert*.

**On brief**: *The Hemminger Law Firm, LLC*, and *Chad K. Hemminger*, for appellant. **Argued**: *Chad K. Hemminger*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Mathias D. Petty, from a judgment of the Franklin County Court of Common Pleas resentencing him pursuant to a remand order from this court regarding consecutive sentence findings.

{¶ 2} On July 16, 2014, appellant was indicted on one count of rape, in violation of R.C. 2907.02, and one count of importuning, in violation of R.C. 2907.07(A). The rape count included a repeat violent offender specification.

{¶ 3} The following background facts are taken from this court's decision in *State v. Petty,* 10th Dist. No. 15AP-950, 2017-Ohio-1062, rendered following appellant's direct appeal of his judgment of conviction and sentence for rape and importuning. At trial,

C.A., a female, who was age 12 at the time of the events, testified that on June 10, 2014, she began using an app called "the Badoo app." *Id.* at ¶ 3. The app is "use[d] * * * 'to meet people,' [and a] user is supposed to be 18 or older." *Id.*

{¶ 4} In July 2014, "C.A. began communicating through the Badoo app with a particular individual whose screen name was 'T-h-a-i,' " and "[t]hey began talking about '[g]iving head, sex, stuff that shouldn't have been talking about.' " *Id.* at ¶ 4. C.A. did not disclose her age to this individual, and C.A. "did not know the age of the other individual." *Id.* According to C.A., "Thai first brought up the topic of oral sex on the app." *Id.*

{¶ 5} On July 5, 2014, C.A. and her mother were at C.A.'s aunt's house. That evening, C.A. and Thai had been exchanging text messages. Later that night, C.A. went outside on the porch because the individual texting her wanted to " 'come over, and [she] said okay.' " *Id.* at ¶ 6. The individual was asking C.A. for her address, and C.A. testified: "[h]e was asking me if I was going to do it then. I needed to do it, and if I wasn't, then he doesn't have to come.' " *Id.* C.A. "defined 'it' as he wanted her to [p]erform oral sex." *Id.*

{¶ 6} At trial, C.A. identified appellant as Thai, the individual who arrived at her aunt's house that evening. Thai arrived and walked up to the porch. C.A. was texting at the time, and Thai "said, '[y]ou look pretty occupied, and I said okay. * * * Then he said, [i]f you're not going to do it, I can just leave. * * * I said okay, and I stopped texting. * * * He asked me if he wanted to - - if I was going to pull it out or if he was.' " *Id.* at ¶ 7.

{¶ 7} C.A. testified that appellant "unzipped his pants. 'He took it out, and I got down on my knees, and I started sucking - - I started giving oral sex.' " *Id.* at ¶ 8. C.A. testified that she "put appellant's penis in her mouth. Appellant 'was moving my head' with his hand." *Id.*

{¶ 8} C.A.'s mother then came out on the porch "and 'started yelling.' Her mother 'was cussing a lot.' " *Id.* at ¶ 9. C.A. "stood up and her mother 'asked what * * * did I just do, and I said, [n]othing. I wouldn't tell her the truth. And then she started getting louder, and then that's when everybody in the kitchen came outside.' " *Id.* C.A. testified appellant appeared to be "cornered" on the porch as other members of the family came outside, but appellant "then jumped over the banister, and he ran to his car across the street and drove away." *Id.* at ¶ 10.

{¶ 9}   C.A. initially told the responding officer that nothing occurred.  C.A. "did not tell the truth because she did not want to deal with the consequences."  *Id.* at ¶ 11. Later, at the hospital, she told a detective what happened.  The detective showed her a photographic array, and C.A. picked appellant's photograph from the array and identified him as the individual who appeared on the porch that evening.

{¶ 10}  On July 5, 2014, Columbus Police Officer David Schulz responded to a dispatch regarding a reported sexual assault of a minor.  Officer Schulz spoke with C.A.'s mother, L.A., "who was 'frustrated, upset, and just distraught all around.' "  *Id.* at ¶ 13. L.A. gave the officer her daughter's phone, and the officer was able to view some messages and "learned that the daughter had used a message service through an app identified as 'Badoo.' "  *Id.* at ¶ 14.  A family friend "provided the name of suspect Mathias Petty by linking the Badoo account to a linked Instagram account to a linked Facebook account." *Id.* at ¶ 16.

{¶ 11}  L.A. testified her daughter C.A. was 12 years of age in July 2014.  On the evening of the incident, L.A. looked out the front door to check on her daughter, and she observed her daughter " 'kneeled down on her knees.  There was a comforter under her knees, and * * * a person standing in front of her holding something in his hand.' " *Id.* at ¶ 20.  L.A. "observed 'my daughter performing oral sex on him.' "  *Id.*  L.A. "saw his penis, and observed appellant zip up his pants."  *Id.*

{¶ 12}  L.A. "opened the door and yelled at appellant. As she walked outside, appellant backed up against the banister and zipped up his pants."  *Id.* at ¶ 21.  L.A. attempted to position herself near the stairs to prevent him from leaving, but appellant "vaulted over the banister and ran to a car parked across the street."  *Id.*

{¶ 13}  Inside the house, C.A. initially "denied everything, but eventually told L.A. what happened."  *Id.* at ¶ 22.  L.A. phoned police and took C.A. to Nationwide Children's Hospital ("Children's Hospital"); L.A. spoke with detectives at the hospital.  Officers showed L.A. a photo array, and she picked out an individual from the array.  Some of L.A.'s family members were able to utilize the app and obtain the identity of the individual; they gave the name to a police officer that evening, and showed the officer text messages from C.A.'s phone.  At trial, L.A. identified appellant as the male she observed on the porch that evening.

{¶ 14} On July 6, 2014, Lauren Moore, a social worker at Children's Hospital, interviewed C.A. During the interview, "C.A. told Moore that she put his 'thing' in her mouth, later clarified as his penis, and C.A. started 'sucking on - - sucking it.' " *Id.* at ¶ 24.

{¶ 15} Appellant, who testified on his own behalf, stated he started using the Badoo app "for dating. I was on there for hooking up." *Id.* at ¶ 29. He acknowledged messaging back and forth on the app with C.A. Appellant testified that "[a]t first, the conversations were '[j]ust being flirty [a]nd it did lead to sexual conversations a lot.' " *Id.* at ¶ 30. Appellant denied knowing C.A. was 12 years of age. At one point, C.A. asked appellant " 'Do you want to hook up?' " *Id.* at ¶ 30. Appellant asked what she meant and, "[a]ccording to appellant, C.A. responded: '[a]re you trying to fuck or not? And I responded with, like, I don't really just jump into sex, but, like, I'm down to explore other things. I'm down to do other things. And I meant, like, sexually, but not intercourse.' " *Id.*

{¶ 16} Appellant testified that on July 5, 2015, C.A. gave him an address and invited him to " 'come over.' " *Id.* at ¶ 31. Appellant believed they were going to watch television and " 'that we would have had some form of * * * physicality during that.' " *Id.*

{¶ 17} Appellant testified that when he walked up to the porch, C.A. was sitting in a chair looking at her phone. Appellant stated that C.A. "got, like, cute and flirty with me, and she was like, [d]o you want me to do it?" *Id.* at ¶ 34. C.A. then "slid down from the chair onto the ground." *Id.* C.A. grabbed appellant's right front jeans pocket. Appellant asked if she was going to invite him inside. Appellant testified C.A. stated "[w]hat's wrong with right here? We're alone." *Id.*

{¶ 18} According to appellant, C.A. was pulling on his jeans pocket while he was holding up his belt; at that moment, "an older woman, that I now know as [L.A.], comes out of the house and is like, [w]hat the fuck are you doing? You know, and she looks at me, and I'm like, [i]s there some kind of a problem? I said, [i]f there is, I don't want any trouble. If there's an issue, I can just leave." *Id.* at ¶ 35. The woman approached appellant and grabbed his "torso," but he was able to get away from her grasp and jump over the porch banister and go to his car. *Id.*

{¶ 19} During direct examination, when questioned whether he asked C.A. to perform oral sex, appellant "stated: '[n]o, I didn't. We had talked about it over the phone.

I don't know if I could say that it happened that day.' " *Id.* at ¶ 37. Appellant also "denied that his penis was ever exposed," and he stated that "C.A. 'was lying' about performing oral sex on him." *Id.*

{¶ 20} Appellant acknowledged that he was convicted of a robbery offense when he was 16 years of age, and was tried as an adult. Appellant "pled guilty to that and received a four-year sentence in prison for robbery." *Id.* at ¶ 38.

{¶ 21} On cross-examination, appellant testified that he was 24 years of age, and that he was previously convicted of robbery with a weapon. He acknowledged that the Badoo app was "used primarily for individuals to meet and engage in sexual activity." *Id.* at ¶ 39. When questioned about what messages he sent to C.A., "appellant testified: 'I probably couldn't recall anything exactly, but I definitely was talking about how I would love to, you know, get head from her and that I would love to touch her, I would love to be inside her, things like that.' " *Id.* He also "acknowledged talking to C.A. about oral sex 'that day.' " *Id.* When asked if he solicited C.A. for oral sex, "appellant responded: 'I would say yes.' " *Id.*

{¶ 22} Following deliberations, the jury returned verdicts finding appellant guilty of rape and importuning. The trial court separately found appellant guilty of the repeat violent offender ("RVO") specification. The court sentenced appellant to an indefinite term of 10 years to life imprisonment for rape, an additional consecutive 3-year term for the RVO specification, and 24 months for importuning, with the rape and importuning counts to be served consecutively to each other.

{¶ 23} Appellant timely appealed his conviction, raising four assignments of error. Specifically, appellant argued that: (1) the trial court erred in overruling his hearsay objection to a police officer's testimony about the contents of C.A.'s phone messages, (2) the trial court erred in denying his motion for judgment of acquittal as to the RVO specification, (3) his convictions were against the manifest weight of the evidence, and (4) the trial court's aggregated prison sentence was contrary to law. In *Petty,* this court overruled appellant's first, second, and third assignments of error.

{¶ 24} With respect to his fourth assignment of error, challenging the trial court's sentence, this court rejected appellant's contentions the trial court erred by failing to merge the rape and importuning counts and in sentencing him to a term of 10 years to life

on the rape count. We further determined, however, that the trial court failed to make requisite findings under R.C. 2929.14(C) for the imposition of consecutive sentences. Thus, while affirming the convictions, this court remanded the matter for the trial court to consider whether consecutive sentences were appropriate under the statute and, if so, to make the appropriate findings on the record at the sentencing hearing and to incorporate those findings into its sentencing entry.

{¶ 25} On April 26, 2017, the trial court conducted a resentencing hearing. On May 2, 2017, the trial court filed a judgment entry imposing an indefinite term of 10 years to life imprisonment for count one (rape), and a 24-month sentence for count two (importuning), as well as an additional 3-year consecutive term of imprisonment for the RVO specification. The court ordered counts one and two to be served consecutively to each other, as well as consecutively to appellant's prior sentence in case No. 14CR-1733.[1]

{¶ 26} On appeal, appellant raises the following assignment of error for this court's review:

> Defendant-Appellant's aggregated prison sentence is clearly and convincingly contrary to law and/or the product of an abuse of discretion by the trial court.

{¶ 27} Under his single assignment of error, appellant argues the trial court's imposition of consecutive sentences was contrary to law and constituted an abuse of discretion. Appellant contends the trial court failed to consider the statutory factor of proportionality when it imposed the 24-month sentence for count two (importuning) to run consecutive to both the rape sentence and the RVO specification. According to appellant, the trial court erred when it failed to state any findings as to why the imposition of an additional two years on the importuning charge was necessary and not disproportionate.

{¶ 28} At the outset, we note appellant's contention that the trial court's imposition of consecutive sentences constituted an abuse of discretion misstates the applicable standard of review. An appellate court reviews a sentence imposed by a trial court "under the standard of review set forth in R.C. 2953.08(G)(2), which governs all felony

---

[1] In Franklin C.P. No. 14CR-1733, appellant entered a guilty plea and was sentenced on two counts of aggravated burglary (including a firearm specification attached to one of the counts) and one count of intimidation of a witness.

sentences." *State v. Kaaz,* 12th Dist. No. CA2016-05-010, 2017-Ohio-5669, ¶ 92, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Pursuant to the provisions of R.C. 2953.08(G)(2), "an appellate court does not review the sentencing court's decision for an abuse of discretion." *Id.,* citing *Marcum* at ¶ 10. Instead, "R.C. 2953.08(G)(2) compels an appellate court to modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that 'the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.' " *Id.,* quoting *Marcum* at ¶ 1.

{¶ 29} Under Ohio law, "[a] sentence is not clearly and convincingly contrary to law where trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.' " *Id.* at ¶ 93, quoting *State v. Julious*, 12th Dist. No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. A trial court's imposition of a consecutive sentence is contrary to law where the court "fails to make the consecutive sentencing findings as required by R.C. 2929.14(C)(4)." *Id.* at ¶ 94, citing *State v. Marshall,* 12th Dist. No. CA2013-05-042, 2013-Ohio-5092, ¶ 8.

{¶ 30} R.C. 2929.14(C)(4) states as follows:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the

offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 31} Thus, the above provisions require a trial court to make three findings before imposing consecutive sentences: "(1) that consecutive sentences are necessary to protect the public from the future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the subsections (a), (b), or (c) apply." *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 76.

{¶ 32} In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus, the Supreme Court of Ohio held: "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." Further, "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶ 33} At the resentencing hearing in this case, the trial court stated in part the following:

This Court finds that consecutive sentences are necessary to protect the public from future crime and to punish the offender.

Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, finding that the Defendant, Mr. Petty, was out on bond in Case No. 1733 when the offense in 3744 occurred.

The Court also notes that the harm caused by these multiple offenses, the rape and the importuning, was so great or unusual that no single prison term for any of the offenses

> committed as part of a single course of conduct adequately reflects the seriousness of Mr. Petty's conduct.
>
> Finally, the Court notes, in support of its decision to impose consecutive sentences on these two counts, that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender, noting Mr. Petty's prior conviction for aggravated robbery, as a felony of the first degree.
>
> In support of these consecutive sentences, specifically the Court notes the Defendant's prior conviction for aggravated robbery; that he failed to respond favorably in the past to a sanction imposed for criminal convictions; and that the injury to the victim in 3744 of both crimes, separate crimes, which required separate animus and are complete crimes in and of themselves, those injuries were serious, psychological injuries.

(Apr. 26, 2017 Tr. at 16-17.)

{¶ 34} On review, the record indicates the trial court engaged in the proper analysis regarding the issue of proportionality. As set forth above, the trial court specifically found that "[c]onsecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, finding that the Defendant, Mr. Petty, was out on bond in Case No. 1733 when the offense in 3744 occurred." (Apr. 26, 2017 Tr. at 16.) In addition to finding that consecutive sentences were necessary to protect the public from future crime and to punish the offender, and that consecutive sentences were not disproportionate to the seriousness of the offender's conduct and to the danger he posed to the public, the trial court also made the third requisite finding as to whether at least one of the factors under R.C. 2929.14(C)(4), subsection (a), (b) or (c), was applicable.

{¶ 35} As noted by plaintiff-appellee, State of Ohio, the trial court made findings as to the applicability of all three of the factors listed under those subsections. Specifically, the trial court found (pursuant to R.C. 2929.14(C)(4)(a)) that appellant "was out on bond in Case No. 1733 when the offense in 3744 occurred"; further, the court found (pursuant to R.C. 2929.14(C)(4)(b)) "the harm caused by these multiple offenses, the rape and the importuning, was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of Mr.

Petty's conduct," and that (pursuant to R.C. 2929.14(C)(4)(c)) appellant's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from further crime by the offender, noting Mr. Petty's prior conviction for aggravated robbery, as a felony of the first degree." (Apr. 26, 2017 Tr. at 16-17.)

{¶ 36} During the hearing, the trial court also cited appellant's "prior conviction for aggravated robbery; that he failed to respond favorably in the past to a sanction imposed for criminal convictions; and that the injury to the victim in 3744 of both crimes, separate crimes, which required separate animus and are complete crimes in and of themselves, those injuries were serious, psychological injuries." (Apr. 26, 2017 Tr. at 17.)

{¶ 37} Appellant raises an argument related to the trial court's finding under R.C. 2929.14(C)(4)(b), asserting the trial court should not have imposed consecutive sentences because, according to appellant, the rape and importuning offenses were "part of the same course of conduct." Appellant, in essence, raises a merger argument.

{¶ 38} We note that, in his direct appeal, appellant raised a similar argument; specifically, that the trial court erred in not merging the rape and importuning counts based on his contention that "since force was not involved, the importuning was a natural part of the rape because the offenses were committed with the same animus, or a desire for sex, and the harm from each offense was not separate and identifiable from the harm of the other offense." *Petty* at ¶ 72. This court rejected appellant's argument, finding that the offenses were based on "separate conduct." *Id.* at ¶ 77. On this point, we determined that "appellant committed the rape when he engaged in sexual conduct with C.A.," while "[t]he act of seeking, asking, influencing, inviting, tempting, or pressuring [i.e., importuning] was complete before any sexual conduct or sexual contact occurred." *Id.* at ¶ 78. This court further held that "these two offenses involve separate harms, and, therefore, are not allied offenses." *Id.* at ¶ 79. Accordingly, appellant's assertion the trial court erred in failing to impose concurrent sentences on the basis that the offenses were part of the same course of conduct is not persuasive.

{¶ 39} Nor do we find persuasive appellant's contention the trial court erred in failing to consider the fact he was 16 years of age at the time of the offense giving rise to the RVO specification. As noted by the state, appellant was bound over to the adult court (in 2008) prior to being convicted of aggravated robbery with a firearm specification.

{¶ 40} A review of the record in this case indicates the trial court made the requisite findings under R.C. 2929.14(C)(4), and we note the trial court incorporated its findings into the post-remand judgment entry. Further, the record does not show clearly and convincingly that the trial court's findings are unsupported by the record or the sentence is otherwise contrary to law.

{¶ 41} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

TYACK, P.J., and LUPER SCHUSTER, J., concur.

_____